# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| QUINTEZ TALLEY | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| C/O CONSTANZO; C/O BROCCOLIER; DEPT. OF CORRECTIONS; and LT. REBER | : | NO. 18-5416 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                  **July 2, 2019**

      Plaintiff Quintez Talley, a prisoner proceeding *pro se* and *in forma pauperis*,[1] filed this civil action asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983. He also brings various state law claims. He has sued the Pennsylvania Department of Corrections ("DOC") and three of its officials, Corrections Officer ("C/O") Jonathan Constanzo, former-Corrections Officer Kyle Bruccoliere,[2] and Lieutenant Andrew Reber.[3]

      Defendants have moved to dismiss the complaint for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). Because Talley failed to exhaust his administrative remedies, we shall grant the motion and dismiss the federal law claims. We shall decline to exercise supplemental jurisdiction over the state law claims and dismiss those without prejudice.

---

[1] December 12, 2018 Order granting Pl.'s Mot. for Leave to Proceed *In Forma Pauperis* (ECF No. 5).

[2] Talley references this defendant incorrectly as "Broccolier" or "Brock" in the complaint. For present purposes, we shall refer to defendant Bruccoliere by the correct spelling of his name.

[3] Compl. (ECF No. 2).

1

## Background[4]

While Talley was in the custody of the DOC at the State Correctional Institution ("SCI") at Graterford, another inmate informed him that defendants Bruccoliere and Constanzo could obtain commissary items for prisoners in excess of the prisoner limits in exchange for giving these C/Os a portion of the prisoners' items.[5] Talley made arrangements with them to obtain excess commissary in exchange for an unspecified portion of his commissary items.[6] He placed orders with them on June 13 and June 27, 2017.[7]

At some point, upon his return from the mental health unit ("MHU") at SCI-Camp Hill, Talley realized that about one-third of his commissary food items had been removed from the place where only Bruccoliere and Constanzo knew they were stored.[8] On August 22, 2017, after Talley's relationship with Bruccoliere and Constanzo "soured," Constanzo denied Talley his dinner tray.[9]

On August 24, 2017, Talley complained orally and in writing to defendant Reber regarding the "coercion and/or extortion" by Bruccoliere and Constanzo.[10] In retaliation, Bruccoliere and Constanzo harassed Talley by encouraging other inmates to call him a "rat" and "snitch," and encouraging other inmates and DOC personnel to harass him.[11]

---

[4] The following facts are taken from the complaint and are deemed true for the purposes of the motion.

[5] Compl. ¶¶ 8, 10-12.

[6] *Id.* ¶¶ 15, 25.

[7] *Id.* ¶¶ 10, 58.

[8] *Id.* ¶ 26.

[9] *Id.* ¶ 27.

[10] *Id.* ¶ 28.

[11] *Id.* ¶¶ 29-33.

He also accuses Bruccoliere and Constanzo of taking four of his legal books worth $187.80 that had been mailed to him and signed for on December 20, 2017. They also caused one additional bag of commissary to go to the "POC against [Tally's] wishes."[12]

Based on these allegations, Talley filed this civil action pursuant to various federal and state laws. This is the ninth federal action of fifteen he has filed since 2016.

Talley alleges that defendant Bruccoliere violated the ADA and the Rehabilitation Act when he told Talley he would only get commissary if he was compensated with some of it.[13] Talley alleges defendants Bruccoliere and Constanzo also violated the ADA and Rehabilitation Act when they "spread the false allegation that [Talley] was a rat and snitch" and for taking Talley's commissary after Talley's report to defendant Reber.[14] Talley alleges defendant Reber violated the ADA and the Rehabilitation Act by failing to protect him from being "coerced," "robbed," and "extorted" of additional commissary and his legal books.[15]

Talley contends that the DOC, Bruccoliere, and Constanzo violated RICO when Bruccoliere and Constanzo withheld a percentage of the June 13 and June 27 commissary, took his four books, and had an additional bag of commissary taken to the POC.[16] This allegation contradicts Talley's assertion that he had sought out the two officers to make a deal to circumvent the commissary limits, a deal he made.

---

[12] *Id.* ¶¶ 35-37, 39.

[13] *Id.* ¶ 52.

[14] *Id.* ¶ 53.

[15] *Id.* ¶¶ 54-57.

[16] *Id.* ¶ 58.

3

Talley alleges numerous constitutional violations pursuant to 42 U.S.C. § 1983. First, he claims defendants Bruccoliere and Constanzo violated the First Amendment by threatening to poison his food and starting rumors that he was a "rat" and "snitch."[17] Second, Talley alleges Bruccoliere and Constanzo violated the Fourth, Fifth, and Fourteenth Amendments by taking his four legal books with no probable cause.[18] Third, Bruccoliere and Constanzo violated Talley's Eighth Amendment rights by telling other prisoners he was a "rat" and by forcing him to pay a fee for exceeding his commissary limits, and Reber violated these rights by failing to protect him from the extortion.[19]

Talley also claims that Bruccoliere and Constanzo committed the torts of coercion and/or extortion when they exercised their authority over him to receive a percentage of his two commissary orders in June 2017.[20] Additionally, Talley claims that Bruccoliere and Constanzo converted the food items he had stored in the MHU while he was at SCI-Camp Hill.[21] Talley lastly alleges that Bruccoliere and Constanzo engaged in a conspiracy when they "worked in cohesion to deprive [Talley] of his commissary through extortionate tactics . . . in an attempt to deprive [him] of the right to his own property."[22]

Talley seeks declaratory relief, injunctive relief, and damages.

Defendants move to dismiss the action for failure to exhaust administrative remedies. They argue that Talley's claims are barred because he failed to follow the mandatory prerequisites of the PLRA, which applies to all complaints about prison

---

[17] *Id.* ¶ 59.
[18] *Id.* ¶ 60.
[19] *Id.* ¶¶ 61-63.
[20] *Id.* ¶¶ 64-65.
[21] *Id.* ¶ 66.
[22] *Id.* ¶ 67.

4

conditions. Because the exhaustion issue arises from indisputably authentic documents, we may decide the motion to dismiss without converting it to a summary judgment motion.[23] *Spruill v. Gillis*, 372 F.3d 218, 228 (3d Cir. 2004) (exhaustion "turn[ed] on indisputably authentic documents related to [prison] grievances" and court held it may consider those documents without converting a motion to dismiss into a motion for summary judgment).

**Analysis[24]**

*Federal Claims – Exhaustion under the PLRA*

Before filing suit under section 1983 or any other federal law, a prisoner must exhaust all available administrative remedies. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [1983 or any other federal law] until administrative remedies as available are exhausted." 42 U.S.C. § 1997(e)(a). To properly exhaust, the prisoner must comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). He must pursue all available avenues in the process. *Id.*; *see also Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *Spruill*, 372 F.3d at 222. If he fails to do so, his action must be dismissed. *Spruill,* 372 F.3d at 227.

Pennsylvania Department of Corrections Administrative Regulation 804 ("DC-ADM 804") mandates that inmates "must submit a grievance for initial review to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based."[25] If an inmate appeals the grievance officer's decision, he must do so "within 10

---

[23] Defs.' Mot. to Dismiss at 3-4 (ECF No. 14).

[24] Both defendants and Talley submit as exhibits grievance forms that Talley submitted while in DOC custody.

[25] DC-ADM 804.VI.A.8.

5

working days from the date of the Initial Review decision or notice of a grievance restriction."[26]

In their motion, the defendants attach three DC-ADM 804 grievance forms Talley submitted during his time in SCI-Graterford, none of which covers, directly or indirectly, his claims in the complaint.[27] In opposition, Talley responds that he had completed a DC-ADM 001 form on August 24, 2017, to address the conduct complained of in the complaint.[28] Defendants concede in their reply that Talley's DC-ADM 001 was an acceptable route to satisfy the PLRA's administrative exhaustion requirement.[29] Nevertheless, Talley's complaints in the August 24, 2017 DC-ADM 001 do not mention the claims or individuals forming the basis of this lawsuit.[30]

In his DC-ADM 001, Talley first addressed the June 2017 commissary orders that Bruccoliere delivered on July 5, 2017.[31] He detailed the items in that commissary delivery, stating that Bruccoliere and Constanzo would give Talley "bits and pieces" of food over the following weeks.[32] He noted that these C/Os "use the commissary that they have to cook food [that] they feed the inmates they wish to gain favor with."[33]

Talley then complained that on August 22, 2017, Constanzo had told him to stand at the back of his cell to retrieve his tray, which Talley found "odd" since they were "just

---

[26] DC-ADM 804.VI.C.1.b.

[27] Ex. 1 to Defs.' Mot. to Dismiss (ECF No. 15).

[28] Pl.'s Opp'n to Mot. to Dismiss at 1 (ECF No. 18).

[29] Defs.' Reply to Mot. to Dismiss at 2 (ECF No. 19) (citing *McCain v. Wetzel*, No. 12-0789, 2018 WL 3439204, at *6 (M.D. Pa. July 17, 2018)).

[30] *Id.* at 2-3.

[31] August 24, 2017 DC-ADM 001 at 1 (ECF No. 18, Ex. 1).

[32] *Id.*

[33] *Id.*

6

cooking"—presumably commissary food—with each other.[34]

Talley wrote further that on August 21, 2017, he requested his legal materials.[35] He did not state to whom he made this request. Angered at the lack of response, he flooded his cell.[36] Correctional Officer Ionata and others cleaned the flooding.[37] The following morning, C/O Ionata told Talley that if he wanted his tray, he would need to stand at the back of his cell and face the wall.[38] Talley refused.[39] At this point, C/O Roberts came to Talley's cell and told him to "swing" at the C/Os and to "suck his [genitals]."[40]

The following day, C/O "H" told Talley to stand at the back of his cell to receive his tray, which Talley again refused.[41] Hungry, angry, and feeling hopeless, Talley began to feel suicidal and used a lighter to set toilet paper on fire.[42] Several DOC personnel, including C/O Ionata, Sergeant Brown, and Lieutenant Taylor, came and laughed, did nothing to help Talley, and urged him to set more items on fire.[43] Talley was eventually taken to medical.[44]

Talley also generally complained about a pattern in which the correctional officers did not do the required ten minute rounds; threatened to use physical force on the

---

[34] *Id.*
[35] *Id.*
[36] *Id.* at 2.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at 2-3.
[41] *Id.*
[42] *Id.* at 3-4.
[43] *Id.* at 4.
[44] *Id.*

7

prisoners; and threatened to spit in the prisoners' food, creating an atmosphere where the prisoners "live in fear."[45]

Although Talley's DC-ADM 001, filed on August 24, 2017, does reference the June 2017 commissary orders in his pleading, it was filed too late. The form must be filed within 15 working days from the incident. For the July 5, 2017 commissary delivery from which Bruccoliere and Constanzo allegedly took a commission, the August 24, 2017 form was filed beyond the 15-day limit. Talley does not complain in his DC-ADM 001 about items stolen during his stay at SCI-Camp Hill, the additional bag of commissary that went to the POC, or his legal books.

The DC-ADM 001 alleges harassment. None of the allegations involve the words "rat," "snitch" or similar harassment based on alleged directives from the defendants. Significantly, the harassment that Talley alleges in his complaint stems from his filing the DC-ADM 001 form itself.

Not only is the DC-ADM 001 untimely, it does not detail the events that give rise to the claims in his complaint. Talley's form describes his refusal to stand at the back of his cell to obtain his meal trays, his flooding his cell, and his lighting toilet paper on fire. It lacks any allegation that Bruccoliere and Constanzo took a percentage of the June 2017 commissary orders (or any other prisoners' commissary) in exchange for allowing prisoners to order in excess of the limits, or that he was harmed with the commissary exchange. There is no reference in the grievance that the defendants took any of his commissary or his legal books.

---

[45] *Id.*

A grievance must contain the subject matter of the lawsuit to constitute proper exhaustion because it "must at least alert[ ] the prison to the nature of the wrong for which redress is sought." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 295 (3d Cir. 2016). Talley's DC-ADM 001 form does not constitute proper exhaustion of his section 1983 and federal law claims.

The deficient content of his DC-ADM 001 aside, Talley did not complete the administrative process. He did not appeal the grievance officer's decision "within 10 working days . . . ." DC-ADM 804.VI.C.1.b. He did not submit any evidence that he appealed the final decision as required under the manual. To properly exhaust, the prisoner must complete all steps in the grievance process. *Woodford*, 548 U.S. at 90.

There was no grievance for harassment and events occurring after the August 24, 2017 grievance. He concedes he did not file a later grievance about the missing legal books. He argues in his reply brief that he did not know about the "extortion of his book[s] until months later."[46] According to Talley, he was on suicide watch and unable to possess a writing utensil from December 15, 2017, to January 30, 2018, rendering him physically unable to file a timely grievance.[47]

The Supreme Court has held that grievances are "unavailable" in three circumstances: (1) when the process operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief . . ."; (2) when the process is "so opaque that it becomes, practically speaking, incapable of use," such as when a prisoner cannot navigate the process; or (3) "when prison administrators thwart inmates from

---

[46] Reply at 5.
[47] *Id.*

9

taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60. Here, the process was available to Tally. He was able to file complaints numerous times, clearly evidencing the process in place at Graterford, the officers' willingness to provide relief, and Talley's capability and knowledge of navigating the grievance process.

It appears that Talley did not file an official grievance about the legal books because he believed it would be futile due to its untimeliness. However, futility does not excuse Talley's failure to address the situation through the grievance process. *Ross*, 136 S. Ct. at 1859-60; *see also Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002)); *Nyhuis v. Reno*, 204 F.3d 65, 66-67 (3d Cir. 2000); *Wright v. State Corr. Inst. at Greene*, No. 06-865, 2009 WL 2581665, at *3 (W.D. Pa. Aug. 20, 2009) (holding that because DC-ADM 804 allows for extensions of time in certain circumstances, and because plaintiff did not ask for an extension to file an out-of-time grievance, he had not substantially complied with the administrative remedy to exhaust claims); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (prison allowed grievances to be filed late for good cause and because prisoner did not seek permission to file late, he did not exhaust administrative remedies).

Talley did not pursue all available avenues in the grievance process. Because he has failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997(e)(a), his federal claims are barred.

*State Law Claims*

"Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an

affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citing *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)); *see also* 28 U.S.C. § 1367(c)(3). No exceptions apply here.

There is no reason to retain jurisdiction over Talley's state law claims, which may be asserted in state court. *See e.g., Segers v. Williams*, No. 13-2413, 2014 WL 285078, at *5 n.9 (E.D. Pa. Jan. 27, 2014). Thus, we shall decline to exercise supplemental jurisdiction.

**Conclusion**

Because Talley failed to exhaust his administrative remedies under the PLRA, we shall grant the defendants' motion and dismiss the federal claims. We decline to exercise supplemental jurisdiction over his state law claims. Therefore, this action will be dismissed with prejudice as to all defendants as to the federal law claims and without prejudice as to the state law claims.

/s/ TIMOTHY J. SAVAGE J.